No. 82,037

In the Matter of STEVEN L. ISLAS, *Respondent*.

(972 P.2d 764)

Opinion filed January 22, 1999.

*Frank D. Diehl,* deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*J. Larry Linn,* of Wichita, argued the cause for respondent, and *Steven L. Islas,* respondent, argued the cause pro se.

*Per Curiam:* This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against Respondent Steven L. Islas, an attorney admitted to the practice of law in the state of Kansas, whose business address is in Wichita.

The facts are not disputed. Respondent did not file exceptions to the hearing panel's report. Under Rule 212(c) and (d) (1998 Kan. Ct. R. Annot. 236), the report is deemed admitted.

We adopt the hearing panel report as modified, suspending the imposition of indefinite suspension for a probation period of 2 years from this date.

During oral argument, a prior unresolved disciplinary action against Respondent was brought to the attention of the court. On January 20, 1998, a hearing panel heard Case No. A6763; however, the final hearing panel report was never received by the office of the Disciplinary Administrator. As a result, Case No. A6763 was not filed as a formal complaint with this court. The Deputy Disciplinary Administrator has since filed a stipulation and notice containing Case No. A6763 and the January 20, 1998, hearing panel report. We agreed to consider Case No. A6763 in conjunction with the pending complaint.

## Case No. A6763

The Respondent takes no exception to the report. Under Rule 212(c) and (d) (1998 Kan. Ct. R. Annot. 236), the A6763 report is deemed admitted.

Respondent failed to notify his client of the issuance of a bench warrant for the client's arrest, in violation of MRPC 1.4 (1998 Kan. Ct. R. Annot. 296), and also failed to cooperate with the Disciplinary Administrator's investigations, in violation of Supreme Court Rule 207 (1998 Kan. Ct. R. Annot. 222).

The panel found unanimously, by clear and convincing evidence:

"2. Respondent represented Bruce R. Bell in a criminal proceeding, *State of Kansas v. Bruce R. Bell*, 95 CR 638. Bruce Bell was charged in a complaint/information in Sedgwick County District Court alleging that Mr. Bell drove a motor vehicle on or about the 26th day of July 1994, after being declared an habitual violator in the state of Florida.

"3. Mr. Bell and Respondent appeared for the first appearance and preliminary hearing (at which Mr. Bell waived the preliminary hearing). A trial was set for July 5, 1995, but was continued to July 24, 1995.

"4. Mr. Bell did not appear at the trial on July 24, 1995, bond was forfeited and a bench warrant was issued for Mr. Bell's arrest. Respondent failed to inform Mr. Bell of the issuance of the bench warrant.

"5. Mr. Bell was arrested on the bench warrant on July 17, 1996. On August 12, 1996, Respondent filed a motion for bond reduction and the motion was heard on August 14, 1996, when Mr. Bell pleaded guilty to driving while an habitual violator. Other charges were dismissed as part of the plea bargain.

"6. The investigation of the complaint was initially assigned to Mr. Paul Thomas. Mr. Thomas wrote to Respondent on October 1, 1996, requesting a written response. Respondent failed to provide Mr. Thomas with a response to Mr. Bell's complaint.

"7. The investigation was reassigned to Mr. Paul McCausland when Mr. Thomas became ill in February 1997. Mr. McCausland wrote to Respondent on April 21, 1997, asking for a response to the Bell complaint. Mr. McCausland again wrote on May 16, 1997, asking Respondent to respond by May 22, 1997.

"8. On May 21, 1997, Mr. McCausland received a response from Respondent in which Respondent referred to a transcript of sentencing hearing in Mr. Bell's criminal case and promised to provide the transcript to McCausland. However, the transcript was not forthcoming.

"9. Mr. McCausland followed up with several calls to Respondent's office and left messages requesting the transcript. On July 14, 1997, Mr. McCausland sent a facsimile transmission to Respondent requesting the transcript and told him that the investigative report was to go to the committee on July 17, 1997, with or without the transcript.

"10. Mr. McCausland finally received the transcript of the October 23, 1996, hearing by facsimile on July 15, 1997. The court reporter's certificate shows the transcript was not prepared until the day Mr. McCausland received it.

"Respondent stipulated that he failed to notify his client, Mr. Bell, of the issuance of the bench warrant, and that he failed to respond to investigator Thomas and responded in an untimely manner to investigator McCausland."

The panel considered matters in mitigation and aggravation summarized as follows:

"Aggravating Factors

"Prior disciplinary offenses. Respondent has one prior disciplinary offense. On June 12, 1997, Respondent received an informal admonition, in which he was found to have violated Rule 1.3 regarding diligence.

"Mitigating Factors

"Absence of a dishonest or selfish motive.

"Personal or emotional problems if such misfortunes have contributed to the violations of the Model Rules of Professional Conduct. During the last year, Respondent lost his mother after an extensive battle with cancer.

"Timely good faith effort to make restitution or to rectify the consequences of the misconduct. Respondent continued to represent Mr. Bell and worked out a plea agreement in which Mr. Bell was released on a signature bond and placed on probation.

"Physical disability, in that Respondent suffered from out of control diabetes. He has, since the misconduct occurring in this case, been admitted into a four-day diabetic treatment program at St. Francis Hospital in Wichita and been prescribed a new regimen of insulin shots, which he is following.

"Previous good character and reputation in the community including any letters from clients, friends and lawyers in support of the character and general reputation of the attorney. Respondent offered letters in support from Thomas M. Klein, a lawyer and State Representative from the 103rd District (Sedgwick County), and Gregory D. Keith, a lawyer and Municipal Court Judge for Haysville, Kansas. Both men spoke well of Mr. Islas and noted Respondent's medical problems and the loss of his mother after an extended illness.

"Present and past attitude of the attorney as shown by his cooperation during the hearing and his full and free acknowledgement of the transgressions. The panel finds this applies only to the extent that, once the complaint was filed, Respondent cooperated with the Disciplinary Administrator."

The hearing panel found Respondent to have violated MRPC 1.4 and Kansas Supreme Court Rule 207. The Disciplinary Administrator and Respondent stipulated to a recommendation of published censure. The panel agreed with the recommendation. The panel concluded:

"The panel admonished Respondent that future appearances before the Board for Discipline of Attorneys would result in a serious risk of more severe sanction.

The panel further admonished Respondent, in light of the medical records contained in Respondent's exhibits, that he remain alcohol free, because use of alcohol, especially in combination with his diabetes, appears to have contributed to his problems in this matter."

## Cases Nos. A7027, A7036, A7058, DA7272

The pending complaint against respondent involves four cases: A7027, A7036, A7058, and DA7272.

The panel unanimously found by clear and convincing evidence:

### Case No. A7027

"2. Respondent was retained by Danny West, Sr., in July 1995, to handle a custody case. During the course of representation, West participated in a conversation with a local psychologist, Dr. Gary Hackney, who was involved in the case as a witness.

"3. Mr. West believed the local psychologist who was hired by the opposition was committing malpractice and Mr. West chose to tape record a conversation involving the psychologist and Mr. West. This conversation took place on April 8, 1996, and this tape recording was turned over to Respondent on April 10, 1996.

"4. Mr. West was disappointed with the outcome of the custody matter and wanted to sue the psychologist and asked Respondent to file a lawsuit against the psychologist.

"5. Respondent declined to represent Mr. West in the lawsuit against Dr. Hackney and West requested Respondent return the file and tape recording to West.

"6. Respondent refused to return the file documents or the tape recording which had been given to him for safekeeping, even though the representation had been terminated. Mr. West subsequently brought this complaint to the Disciplinary Administrator's Office. The tape recording was never returned to Mr. West.

"7. During the course of the investigation of this disciplinary complaint, Respondent admitted to the investigator that Respondent did not know the whereabouts of the tape but believed that the tape was somewhere in Respondent office.

"8. The investigator, David Moses, made numerous attempts, both in writing and by telephone to obtain a response from Respondent regarding Mr. West's complaint. Respondent did not respond to the investigator's written requests nor did he return the investigator's telephone calls or provide a written response. In October 1997, after several months had passed with no response, the investigator reported his findings to the Wichita Ethics and Grievance Committee.

"9. Respondent finally filed a written response to the investigator's request on November 11, 1997, after the investigation had been concluded."

### Case No. A7036

"10. Respondent was hired by Jeffrey L. Maggard to represent Maggard in the

Traffic Division of the District Court of the Eighteenth Judicial District. Maggard was charged with operating a vehicle while under the influence of alcohol.

"11. The case was continued several times and Respondent scheduled the matter for June 5, 1996. Respondent failed to notify Maggard of the court date.

"12. Respondent failed to appear in court or seek a continuance of the June 5, 1996, court date, which resulted in an arrest warrant being issued for Maggard. Maggard was arrested on a subsequent DUI and the bond was raised and his release delayed because of the additional bench warrant for failure to appear on June 5, 1996.

"13. Maggard had paid Respondent $1,300, although the initial date that Maggard retained Respondent is not clear. Maggard's mother, Linda Perry, contacted Respondent, who told Perry that it was Respondent's fault that Maggard had been arrested. Respondent further told Perry that Respondent would post Maggard's bond to secure his release. Respondent never posted such a bond. The bonds were reduced when Maggard appeared without Respondent on July 1, 1996.

"14. Maggard then hired a new attorney, Ryan Hodge. After Maggard was released from jail, he tried to contact Respondent about six (6) times in a three (3) to four (4) week period, but Respondent would not return his calls. Maggard then went to Respondent's office and asked for his money back. Respondent returned $1,000 and said that he would return the remaining $300, although it is not clear whether this promise was conditioned on Maggard's presentation of a receipt for having paid a full $1,300. Respondent never returned the requested $300 to Maggard. Maggard's mother, Linda Perry, subsequently filed this complaint with the Disciplinary Administrator's Office.

"15. The investigation was assigned to Douglas Roth of the Wichita Bar Association. Roth notified Respondent of the complaint on July 18, 1997, and directed him to provide a written response within ten (10) days. Respondent failed to provide a written response within the given time period. On August 5, 1997, Roth called Respondent at Respondent's office. During that conversation, Respondent stated that he would provide a written response.

"16. Having received no response by August 19, 1997, Roth called Respondent's office and left a message. Respondent promised to call back on August 20, 1997, but never returned Roth's call. Roth then mailed a letter to Respondent, again requesting a response. The letter went unanswered.

"17. Roth received no response or communication from Respondent, so on October 7, 1997, Roth sent another letter to Respondent requesting a written response in order that the investigation could be completed. Roth received no response. On November 13, 1997, Roth called Respondent and left a message with his secretary. That date, Respondent returned the call and scheduled a meeting for November 18, 1997. Respondent was asked to bring the Maggard file with him, but Respondent stated there was nothing in the file.

"18. On November 18, 1997, Roth met with Respondent, who stated that he had missed a court appearance, resulting in the issuance of an arrest warrant for Maggard. Respondent stated that when Maggard was arrested on a new DUI, the

old warrant made it harder to secure Maggard's release from jail. Respondent could not explain whether the court date was on his calendar and he forgot the date or whether he failed to place the June court date on his calendar.

"19. On November 12, 1997, Respondent hand-delivered a response to the investigator, well after it had been due in July 1997. The response did not address the issues in the complaint; it only addressed the $300 which had not been returned to the client.

"20. The investigator spoke to two (2) Wichita Municipal Court judges who told the investigator that Respondent's failure to appear at court hearings had become an increasing problem and that one (1) of the judges had even intervened to attempt to correct Respondent's continual failures to appear."

## Case No. A7058

"21. Respondent represented Melissa Kreidler, a/k/a Melissa Skidmore. On April 16, 1994, Melissa Kreidler was involved in an automobile accident that resulted in her receiving two (2) tickets, one for following another vehicle too closely and the other for failure to have proof of insurance.

"22. Soon after receiving the citations, Kreidler retained the services of Respondent to represent her on these tickets. Respondent told Kreidler to pay him $275 to take care of the matter and he represented to her that this amount would cover his time and pay any costs or fines that were ordered by the court. The client paid Respondent $275, as requested, prior to the court appearance date of May 9, 1994.

"23. Kreidler appeared at the May 9, 1994, hearing. Respondent failed to appear. On Kreidler's motion, the matter was continued to June 3, 1994. Kreidler was able to obtain a dismissal of the proof of insurance charge without assistance from Respondent on May 9, 1994.

"24. On June 3, 1994, Kreidler entered a plea to the charge of following another vehicle too closely and the court ordered her to pay court costs in the amount of $40 and a fine in the amount of $10. Ms. Kreidler was given thirty (30) days to pay the court costs and fine.

"25. On June 28, 1994, the Clerk of the District Court mailed notice to Kreidler advising her that the fine and costs had not yet been paid and that her driver's license would be suspended unless this was accomplished. Kreidler says that she did not receive this written notice.

"26. On April 13, 1995, the State suspended Kreidler's driver's license and it was not until July 12, 1995, that Respondent paid the fine, court costs and an additional $100 reinstatement fee to have Kreidler's driver's license reinstated.

"27. The complainant, Matthew Kreidler, the client's husband, told the investigator that because of his wife's suspension of her driving privileges, their insurance rates have increased.

"28. Matthew Kreidler made numerous attempts to contact Respondent after his wife received notice of her suspension in April 1995. Respondent never made contact or returned any of these phone calls.

"29. The Kreidler complaint was assigned to David Moses for investigation. On August 7, 1997, the Disciplinary Administrator's Office advised Respondent of the existence of the complaint and asked Respondent to provide a written response within ten (10) days.

"30. In a letter dated August 11, 1997, W.A. Bonwell, Jr., Chairman of the Wichita Bar Association's Ethics and Grievance Committee advised Respondent that David Moses had been assigned to investigate the Kreidler complaint and Respondent should provide his written response to Moses.

"31. On August 14, 1997, Moses wrote to Respondent, asking him to provide a written response and complete copy of his file within ten (10) days of the receipt of that letter.

"32. On September 18, 1997, the investigator again wrote to Respondent, reminding him that he had failed to respond to the earlier letter of August 14, 1997, and that failure to reply would subject Respondent to disciplinary action pursuant to Supreme Court Rule 207. The letter further directed Respondent to provide a written response to Moses before the end of September 1997.

"33. Moses placed several telephone calls to Respondent and left messages requesting him to call Moses regarding his failure to respond. After a chance meeting between Moses and Respondent at the Sedgwick County Courthouse, Respondent provided a written response dated November 13, 1997. Respondent failed to provide the file as directed by the investigator."

## Case No. DA7272

"34. On April 10, 1998, Respondent appeared before Eric R. Yost, Judge of Division 12 of the Eighteenth Judicial District. The nature of the proceeding was a contempt hearing under K.S.A. 20-1201 against Respondent, resulting from his failure to appear at two prior hearings.

"35. One of the hearings which Respondent missed was a sentencing in a criminal matter in the case of *State of Kansas v. Karla D. Ware,* Case No. 97 CR 1762. The hearing was held on April 7, 1998. The defendant, Ms. Ware, was Respondent's client.

"36. At the Ware sentencing hearing, the court held Respondent in contempt and sentenced him to 24 hours in jail, but suspended imposition of that sanction until the hearing of April 10, 1998, so that Respondent could be heard.

"37. The other court date which Respondent missed was an appearance in a traffic matter on April 7, 1998. Respondent's failure to appear at that hearing caused the court to issue a warrant for Respondent's arrest.

"38. At the April 10, 1998, contempt hearing, the court noted that Respondent had been tardy on many occasions and periodically failed to appear at all on sentencings and other matters that had been before the court in the previous 15 months.

"39. Respondent did attend the April. 10, 1998 contempt hearing.

"40. The court offered Respondent the opportunity to show cause why he should not be found in direct contempt of court, and the court was not persuaded

by Respondent's explanations. The court found Respondent in direct contempt of court and made a specific finding of criminal contempt, beyond a reasonable doubt. The court imposed the sanction of four (4) hours in Sedgwick County jail and required a urinalysis be done and made available to the court.

"41. In response to the court's ruling, Respondent refused to agree to a urinalysis. The court then modified its ruling by stating Respondent would remain in jail until a urinalysis was conducted.

"42. In response to the modified contempt order, Respondent stated his urinalysis would be "dirty," that he had ingested cocaine the night before.

"43. The court then withdrew the urinalysis requirement and ordered Respondent to spend four (4) hours in the county jail."

### The panel report states:

"Respondent stipulated that the facts listed above constitute the following violations.

"Case No. A7027 (West): Respondent stipulated to the violation of Model Rule of Professional Conduct 1.15, regarding safekeeping of property and Supreme Court Rule 207 regarding an attorney's duty to cooperate with a disciplinary investigation.

"Case No. A7036 (Maggard): Respondent stipulated to the violation of MRPC 1.3 regarding diligence, 1.4 regarding communication, 8.4 regarding professional misconduct generally, and SCR 207 regarding an attorney's duty to cooperate with a disciplinary investigation. Respondent also stipulated that he would repay Maggard the requested $300.00 fee.

"Case No. A7058 (Kreidler): Respondent stipulated to the violation of MRPC 1.3 regarding diligence, 1.4 regarding communication, and SCR 207 regarding an attorney's duty to cooperate with a disciplinary investigation. Respondent pointed out that, while he did provide a written response to the disciplinary investigator, he did not do so in a timely fashion.

"Case No. DA7272 (contempt hearing): Respondent stipulated to the violation of MRPC 8.4(d) regarding conduct prejudicial to the administration of justice.

"Consequently, the panel finds, by clear and convincing evidence, these stipulated facts constitute the violations as stipulated by Respondent."

The panel noted several aggravating factors, including prior disciplinary offenses, a pattern of misconduct, obstruction of disciplinary proceedings, substantial experience in the practice of law, and illegal conduct involving the use of controlled substances. The mitigating factors cited an absence of dishonest or selfish motive, cooperation during the hearing, and remorse.

The Disciplinary Administrator and respondent jointly requested a proposed plan for supervised probation. The panel ac-

cepted the plan in part and modified it in part, recommending indefinite suspension, deferred for a period of 2 years.

Respondent sought treatment for his addictions and has since been extremely cooperative with the office of the Disciplinary Administrator. The Assistant Disciplinary Administrator, Frank D. Diehl, stated that Respondent's turnaround was exemplary, and although Mr. Diehl rarely did so, in this case, he altered his recommendation, and agreed with the plan proposed by Respondent.

Respondent has committed multiple violations of the MRPC. Ordinarily, such violations would merit a more serious sanction. However, Respondent's candid admissions in front of Judge Yost and the favorable statements by Mr. Diehl commend the hearing panel's recommendation.

We hold that the findings and conclusions of the hearing panel are supported by clear and convincing evidence. After a careful review of the record, the majority of the court accepts the recommendation of the hearing panel, modified in part, although a minority would not suspend the imposition of the indefinite suspension.

IT IS THEREFORE ORDERED that imposition of indefinite suspension as discipline against Respondent Steven L. Islas be and is hereby suspended and that he be placed on probation for a period of 2 years from this date on the terms and conditions hereinafter set out:

1. Respondent's practice of law shall be supervised by Kent Collins, a practicing lawyer in Sedgwick County, Kansas, and a member of the Impaired Lawyers Committee of the Wichita Bar Association, for a term of 2 years in the manner specified from time to time by the supervising attorney and the Disciplinary Administrator. Mr. Collins shall provide reports to the Disciplinary Administrator on a monthly basis for the first 6 months, followed by reports on a quarterly basis.

2. Respondent shall remain free from illegal drug use during the term of the suspended discipline and supervised probation, to be confirmed by random urinalysis as requested by the supervising attorney. Respondent will pay for the cost of the urinalysis, and

result reports will be sent to the Disciplinary Administrator's office. Respondent shall also remain alcohol free by refraining from the use of alcohol. Reports on Respondent's alcohol free condition shall be submitted to the Disciplinary Administrator upon request of the Disciplinary Administrator.

3. Respondent will attend after care meetings through Addiction Specialists of Kansas, Inc. under the direction and supervision of Timothy M. Scanlan, M.D. Respondent shall also participate twice weekly in a 12-step program. Documentation of participation and attendance at meetings shall be provided to the supervising attorney who shall include the same with the monthly and quarterly reports required herein.

4. Lee McMaster, a practicing attorney in Wichita, and an active member with the Impaired Lawyers Committee for the Wichita Bar Association shall act as treatment monitor for Respondent and report his findings to the supervising attorney, Kent Collins, and the office of the Disciplinary Administrator as may be required by the Disciplinary Administrator.

5. Respondent shall cooperate with all lay persons, health care providers, and other members of the bench and Bar as may be required by the supervising attorney and/or the treatment monitor in the interest of completing Respondent's personal and professional rehabilitation.

6. Respondent shall allow the supervising attorney access to his office, his files, his employees, and his trust account, as well as to his treating physicians or heath care providers. The supervising attorney shall periodically, at least one time per month, check the following:

a. Status of each case being handled by Respondent;

b. Efficiency and state of Respondent's docketing system;

c. Response to clients' requests for information;

d. Respondent's trust account; and

e. Views of local judges as to their evaluation of Respondent's performance, particularly his prompt and timely appearance before tribunals in which he is representing clients.

7. Respondent shall provide the necessary waivers of confidentiality for information that is to be transmitted to the Disciplinary

Administrator's office as may be needed to facilitate and carry out the terms and provisions of supervised practice.

8. Kent Collins shall be acting as an officer and agent of the court as supervisor of probation in monitoring the legal practice of the Respondent. Mr. Collins shall be afforded all immunities granted by Supreme Court Rule 223 (1998 Kan. Ct. R. Annot. 264) during the course of his activities as directed by this order.

9. Any indication of noncooperation as to meeting attendance, practice supervision, drug screen requirements, alcohol free requirements, or any evidence of substance abuse or further disciplinary action resulting in panel-imposed discipline shall result in termination of probation and an automatic indefinite suspension of Respondent's license to practice law.

10. Respondent shall repay the requested $300 fee to Mr. Maggard, as referenced under Case No. A7036.

IT IS FURTHER ORDERED that this order shall be published in the Kansas Reports and the costs herein be assessed to the Respondent.